FILED
2ND JUDICIAL DISTRICT COURT
Bernalillo County
7/18/2022 11:12 AM
CLERK OF THE COURT
Patricia Serna

STATE OF NEW MEXICO
COUNTY OF BERNALILLO
SECOND JUDICIAL DISTRICT COURT

JANE DOE,
    Plaintiff,
v.                                              Case No. D-202-CV-2022-03884

BOARD OF COUNTY COMMISSIONERS
OF THE COUNTY OF BERNALILLO,
BERNALILLO COUNTY HOUSING DEPARTMENT
    Defendant.

## COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

Plaintiff Jane Doe, by and through counsel New Mexico Legal Aid (Jean Philips, appearing), respectfully submits this complaint seeking relief for the violation of her rights by Defendant's failure to provide reasonable accommodations for her disabilities or due process for their denials of her reasonable accommodation requests, in violation of the Fair Housing Amendments Act (FHAA), 42 U.S.C.A. § 3601, *et seq.*; the Americans with Disabilities Act (ADA), 42 U.S.C.A. § 12101, *et seq.*; Defendant's own Administrative Plan and federal housing law. In support of her Complaint, Plaintiff states:

### PARTIES

1. Between 2016 and 2018, Ms. Doe participated in the U.S. Department of Housing and Urban Development ("HUD") Section 8 Housing Choice Voucher Program, commonly called "Section 8." On June 7, 2021, BCHD again found Ms. Doe eligible for the program, issuing her a voucher for a four-bedroom apartment for herself and her three children.

2. Defendant Board of County Commissioners of the County of Bernalillo on behalf of Bernalillo County Housing Department ("BCHD"), is a public housing agency administering a Section 8 program.

### VENUE AND JURISDICTION

**EXHIBIT A**

3. Ms. Doe resides in Bernalillo County, New Mexico.

4. Defendant BCHD is a public housing agency ("PHA") with offices in Bernalillo County, New Mexico.

5. All events relevant to this Complaint occurred in Bernalillo County.

6. Ms. Doe has exhausted any administrative remedies with BCHD.

7. Venue and jurisdiction are proper under NMSA 1978 § 38-3-1, and New Mexico Const., art. VI, § 13.

## STATUTORY AND REGULATORY BACKGROUND

8. The Section 8 program is funded by HUD and is subject to HUD regulations found at 24 CFR Part 982.

9. HUD also issues publications from time to time to guide housing authorities. One such statement, issued in partnership with the Department of Justice, is the *Joint Statement of the Departments of HUD and Justice: Reasonable Accommodations under the Fair Housing Act*, published on May 17, 2004 and available at https://www.justice.gov/sites/default/files/crt/legacy/2010/12/14/joint_statement_ra.pdf ("*Joint Statement*").

10. Under the Section 8 program, a participant tenant obtains a rent voucher from a PHA, which the participant then uses to rent a home from a private landlord.

11. A Section 8 participant generally pays thirty percent (30%) of her adjusted monthly income toward rent and utilities, while the local PHA pays the balance with funds received from HUD.

12. HUD regulations require each PHA to adopt a written administrative plan to set forth policies and procedures for administration of Section 8. 24 C.F.R. § 982.54(a).

2

13. The PHA "*must* administer the program in accordance with the PHA administrative plan" 24 CFR § 982.54(c) (emphasis added).

14. Under 24 CFR § 982.303(a), the initial term of a voucher must be no less than sixty days, during which a voucher holder searches for a private home where the voucher can be used.

15. Under 24 CFR § 982.303(b)(1), a PHA has discretion "to grant a family one or more extensions of the initial voucher term in accordance with PHA policy as described in the PHA administrative plan," unless the extension is needed and requested as a reasonable accommodation for disability.

16. Under 24 CFR § 982.303(b)(2), "If the family needs and requests an extension of the initial voucher term as a reasonable accommodation… to make the program accessible to a family member who is a person with disabilities, the PHA *must* extend the voucher term up to the term reasonably required for that purpose" (emphasis added).

17. BCHD's Administrative Plan ("Plan") setting forth its policies and procedures for the administration of its Section 8 program, can be found at https://www.bernco.gov/community-services/housing-services-programs/housing-administrative-plan/ .

18. The Plan contains the following provisions concerning voucher extensions, *inter alia*:

   a. "The initial voucher term will be 60 calendar days," 5-II.E, i.e., the minimum initial voucher term permitted under federal regulations. 24 CFR § 982.303(a)

   b. "The family must submit a Request for Tenancy Approval and proposed lease within the 60-day period unless the PHA grants an extension." 5-II.E.

   c. "The PHA will automatically approve one 30-day extension upon written request from the family." 5-II.E.

   d. "The PHA will approve additional extensions only in the following circumstances:

3

>> It is necessary as a reasonable accommodation for a person with disabilities.
>>
>> It is necessary due to reasons beyond the family's control, as determined by the PHA. Following is a list of extenuating circumstances that the PHA may consider in making its decision. The presence of these circumstances does not guarantee that an extension will be granted:
>>
>>> Serious illness or death in the family
>>>
>>> Other family emergency
>>>
>>> Obstacles due to employment
>>>
>>> Whether the family has already submitted requests for tenancy approval that were not approved by the PHA."
>
> 5-II.E.

19. The Plan contains the following provisions concerning requests for reasonable accommodations, *inter alia*:

   a. "The PHA must ensure that persons with disabilities have full access to the PHA's programs and services. This responsibility begins with the first contact by an interested family and continues through every aspect of the program." 2-II.A.

   b. "A reasonable accommodation is an adjustment made to a rule, policy, practice, or service that allows a person with a disability to have equal access to the [Housing Choice Voucher] program. For example, reasonable accommodations may include making home visits, *extending the voucher term,* or approving an exception payment standard in order for a participant to lease an accessible dwelling unit." 2-II.B (emphasis added).

   c. "If an applicant or participant indicates that an exception, change, or adjustment to

    a rule, policy, practice, or service is needed because of a disability, HUD requires that the PHA treat the information as a request for a reasonable accommodation, even if no formal request is made [Joint Statement of the Departments of HUD and Justice: Reasonable Accommodations under the Fair Housing Act]." 2-II.C.

d. "[T]he PHA will consider the accommodation any time the family indicates that an accommodation is needed whether or not a formal written request is submitted." 2-II.C.

e. "After a request for an accommodation is presented, the PHA will respond in writing within 10 business days. If the PHA denies a request for an accommodation because there is no relationship, or nexus, found between the disability and the requested accommodation, the notice will inform the family of the right to appeal the PHA's decision through an informal review (if applicable) or informal hearing (see Chapter 16)." 2-II.E.

f. If the PHA denies a request for an accommodation because it is not reasonable (it would impose an undue financial and administrative burden or fundamentally alter the nature of the PHA's operations), the PHA will discuss with the family whether an alternative accommodation could effectively address the family's disability-related needs without a fundamental alteration to the HCV program and without imposing an undue financial and administrative burden." 2-II.E.

### ALLEGATIONS OF FACT

20. Ms. Doe relies on Supplemental Security Income ("SSI") from the Social Security Administration ("SSA") as her sole source of income.

21. An award of SSI requires a determination by the SSA that the applicant has a severe

5

and enduring impairment preventing her from engaging in substantial gainful activity. See 42 USCS § 423(d), 20 CFR § 404.1520).

22. Ms. Doe's disabilities result in a low range of working memory, cognitive functioning and processing speed, and as a result of her disabilities, it is difficult for her to follow instructions or complete tasks.

23. Between 2016 and 2018, Ms. Doe participated in the Section 8 program.

24. BCHD has known since at least 2016 that Ms. Doe receives SSI.

25. On June 7, 2021, BCHD again found Ms. Doe eligible for the Section 8 program, issuing her a voucher for a four-bedroom apartment for herself and her three children.

26. On or about August 2, 2021, Ms. Doe requested an extension of her voucher, as she had not yet been able to locate a suitable apartment willing to accept the voucher.

27. BCHD granted a thirty-day extension, with a new termination date of September 6, 2021.

28. On or about August 26, 2021, Ms. Doe requested reissuance of her moving packet due to having lost the documents issued to her by BCHD.

29. On or about September 3, 2021, Ms. Doe requested another extension via email, noting difficulty finding a place.

30. On the morning of September 7, 2021, BCHD's Section 8 Housing Specialist Leonette Archuleta responded to this email, claiming that it was BCHD's policy not to grant a second extension unless there was an emergency, noting as examples hospitalization and death.

31. Ms. Archuleta indicated that because the last day of her voucher fell on a holiday, Ms. Doe had until 5pm that day to turn in a moving packet.

32. On September 7, 2021, Ms. Doe contacted BCHD several times to urge an extension,

noting difficulty finding a place, loss of her car and what she believed was a COVID infection.

33. On September 7, 2021, BCHD's Housing Director, Betty Valdez, left Ms. Doe a voicemail saying that she would need to see medical records of Ms. Doe's illness.

34. Around this time, Ms. Doe's mother called BCHD and left a detailed message letting BCHD know, if it did not already, that Ms. Doe had a learning disability which made it harder for her to engage in the housing search. See Affidavit, attached as Exhibit A.

35. Ms. Doe also provided some medical records to BCHD.

36. On September 15, 2021, Ms. Archuleta emailed Ms. Doe, acknowledging that the records showed COVID symptoms but indicated that because she was not hospitalized, she did not qualify for another extension.

37. In the same email, Ms. Archuleta indicated that it was policy only to grant one extension.

38. BCHD did not acknowledge, through this email or any other communication at that time, the receipt of information from Ms. Doe's mother demonstrating a possible need for a reasonable accommodation on the basis of Ms. Doe's learning disabilities.

39. BCHD did not, through this email or any other communication at that time, inform Ms. Doe of her right to an informal review or informal hearing concerning its denial of the reasonable accommodation request made on her behalf, as required by Section 2-II.E of its Plan.

40. On October 27, 2021, BCHD acknowledged publicly that more and more landlords were refusing to take the Section 8 voucher. See *Sectioned Off,* published on October 27, 2021, in Searchlight New Mexico.

41. On November 16, 2021, Ms. Doe contacted BCHD again through New Mexico Legal Aid ("NMLA), formally and explicitly requesting reinstatement of her voucher for a term of ninety days as a reasonable accommodation of her disability.

42. Through the same letter, NMLA alerted Housing Director Valdez that Ms. Doe's mother had previously left a detailed voicemail concerning Ms. Doe's learning disabilities and their effect on her ability to engage in the housing search.

43. The letter also reminded Ms. Valdez that BCHD had knowledge of Ms. Doe's receipt of SSI, a benefit only available to people with disabilities severe enough to make them unable to engage in substantial gainful activity.

44. On November 22, 2021, BCHD responded via counsel that it could not reinstate the voucher because the situation Ms. Doe had previously described as requiring an extension did not rise to the level of an emergency.

45. BCHD ignored the formal, written request for a reasonable accommodation included in the November 22, 2021 letter.

46. BCHD did not offer Ms. Doe an informal conference or hearing at this time.

47. BCHD did not discuss whether an alternative accommodation could effectively address Ms. Doe's family's disability-related needs without a fundamental alteration to the Section 8 program and without imposing an undue financial and administrative burden,

48. On December 15, 2021, Ms. Doe responded via counsel notifying BCHD of her intent to sue.

49. On February 4, 2022, counsel for BCHD responded to NMLA's December letter indicating that he did not find BCHD's actions to be contrary to federal law or BCHD's Administrative Plan ("Plan"), but offering to discuss the issue.

50. In a subsequent phone conversation, counsel for BCHD asked, for the first time, whether Ms. Doe had documentation of her disabilities.

51. On April 21, 2022, via counsel, Ms. Doe provided the requested documentation confirming the existence of her mental disabilities and describing the limitations these disabilities created in terms of memory, cognitive function, ability to complete tasks and ability to follow instructions.

52. Counsel for BCHD responded on May 4, 2022, stating that nothing in the documents established "that the corroborative materials were received before Ms. Doe' extension expired" but promising to pass NMLA's letter on to the county and request a response.

53. This was followed by a May 19, 2022 email from BCHD's counsel confirming that BCHD declined to change its position, because Ms. Doe's voucher expired before she requested a reasonable accommodation.

54. On June 2, 2022, Ms. Doe, through counsel, sent a final letter to both BCHD and the Bernalillo County Commission, summarizing the course of communications and actions, and reiterating the intent to sue if Ms. Doe's voucher was not reinstated.

55. On June 17, 2022, after requesting and receiving an extension on its time to reply to Ms. Doe's final demand letter, counsel for BCHD communicated that the County had not changed its position.

56. Ms. Doe has been homeless since before BCHD denied her extension request and has remained homeless throughout the time that BCHD has been in negotiations with her counsel.

57. Ms. Doe's prolonged homelessness is a result of BCHD's refusal to extend Ms. Doe's voucher, subsequent refusal to reinstate her voucher, denial of Ms. Doe's reasonable

accommodation requests and failure to provide Ms. Doe with due process to contest its denial of her reasonable accommodation requests.

## COUNT I: VIOLATION OF THE FAIR HOUSING AMENDMENTS ACT

58. Under the Fair Housing Amendments Act, 42 U.S.C. § 3604(f)(1), a housing provider must make reasonable accommodations in rules, policies, practices, or services when such accommodations may be necessary to afford a person with a disability the equal opportunity to use and enjoy her housing.

59. Ms. Doe has disabilities.

60. Defendant has known since 2016 that Ms. Doe had disabilities.

61. Defendant has known, since September of 2021 or before, that Ms. Doe had learning disabilities that interfered with her ability to engage in the search for housing.

62. Defendant received, via Ms. Doe's mother, a request for an extension due to Ms. Doe's disabilities that should have been treated as a request for a reasonable accommodation of her disabilities. 2-II.C. See also *Joint Statement*, ¶¶13 and 14.

63. Defendant received, via counsel for Ms. Doe, an explicit request for a reasonable accommodation of Ms. Doe's disabilities in November of 2021.

64. Defendant was notified, via counsel for Ms. Doe in November of 2021, that Ms. Doe's mother had already provided information to BCHD which should have been treated as a reasonable accommodation request.

65. On neither occasion, either when Ms. Doe's mother made an informal reasonable accommodation request by phone or when NMLA made a formal reasonable accommodation in writing, did Defendant even acknowledge the reasonable accommodation requests while denying the relief requested.

66. On neither occasion did Defendant engage in an interactive dialogue with Ms. Doe to elicit additional information, to suggest alternative accommodations, or to try otherwise to resolve any disputes. *Douglas v. Kriegsfield Corp.*, 884 A.2d 1109, 1122 & n. 22 (D.C. Ct. App. 2005). See also *Joint Statement* ¶ 7. See also Plan, 2-II.E.

67. Defendant did not elicit additional information about Ms. Doe's disabilities until several months after ignoring Ms. Doe's reasonable accommodation requests, and after being threatened with litigation.

68. After receiving the requested verification of the nature of Ms. Doe's disabilities, Defendant explicitly denied Ms. Doe's reasonable accommodation requests, first because the supporting documentation had not been received before Ms. Doe's voucher expired, and then because Ms. Doe's reasonable accommodation request had not been received before her voucher expired.

69. This denial also violated Ms. Doe's rights under the Fair Housing Amendments Act.

70. Defendant's acts of discrimination caused Plaintiff damages.

71. Defendant acted with malice or reckless indifference that its actions might violate the Fair Housing Amendments Act.

### COUNT TWO: VIOLATION OF THE AMERICANS WITH DISABILITIES ACT

72. Under the Americans with Disabilities Act, 42 USCS § 12101, *et. Seq. ("ADA")*, "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 USCS § 12132.

73. Part of the ADA's prohibition against discrimination is the requirement that "A public entity shall make reasonable modifications in policies, practices, or procedures when the

modifications are necessary to avoid discrimination on the basis of disability, unless the public entity can demonstrate that making the modifications would fundamentally alter the nature of the service, program, or activity. 28 CFR § 35.130

74. BCHD is a public entity as defined by 42 USCS § 12131(1).

75. Ms. Doe is a qualified individual with a disability as defined by 42 USCS § 12131(2).

76. Defendant has known since 2016 that Ms. Doe had disabilities.

77. Defendant has known, since September of 2021 or before, that Ms. Doe had learning disabilities that interfered with her ability to engage in the search for housing.

78. Defendant received, via Ms. Doe's mother, a request for an extension due to Ms. Doe's disabilities that should have been treated as a request for a reasonable accommodation of her disabilities. 2-II.C. See also *Joint Statement*, ¶¶13 and 14.

79. Defendant received, via counsel for Ms. Doe, an explicit request for a reasonable accommodation of Ms. Doe's disabilities in November of 2021.

80. Defendant was notified, via counsel for Ms. Doe in November of 2021, that Ms. Doe's mother had already provided information to BCHD which should have been treated as a reasonable accommodation request.

81. On neither occasion, either when Ms. Doe's mother made an informal reasonable accommodation request by phone or when NMLA made a formal reasonable accommodation in writing, did Defendant even acknowledge the reasonable accommodation requests while denying the relief requested.

82. On neither occasion did Defendant engage in an interactive process with Ms. Doe to elicit additional information, to suggest alternative accommodations, or to try otherwise to resolve any disputes. *Vinson v. Thomas*, 288 F.3d 1145, 1154, 2002 U.S. App. LEXIS 8586 (9th Circ.);

Plan, 2-II.E.

83. Defendant did not elicit additional information about Ms. Doe's disabilities until several months after ignoring Ms. Doe's reasonable accommodation requests, and after being threatened with litigation.

84. After receiving the requested verification of the nature of Ms. Doe's disabilities, Defendant explicitly denied Ms. Doe's reasonable accommodation requests, first because the supporting documentation had not been received before Ms. Doe's voucher expired, and then because Ms. Doe's reasonable accommodation request had not been received before her voucher expired.

85. This denial also violated Ms. Doe's rights under the Americans with Disabilities Act.

86. Defendant's acts of discrimination caused Plaintiff damages.

**COUNT THREE: REQUEST FOR DECLARATORY AND INJUNCTIVE RELIEF**

87. Pursuant to the New Mexico Declaratory Judgment Act, NMSA 1978 § 44-6-1 *et seq*. and 42 U.S.C. § 1983, this Court is authorized to grant Ms. Doe declaratory and injunctive relief.

88. As set forth above, BCHD's Plan sets forth the circumstances in which it will approve an additional voucher extension: (a) When it is "necessary as a reasonable accommodation for a person with disabilities;" and (b) When it is "necessary due to reasons beyond the family's control, as determined by the PHA."

89. Aside from her reasonable accommodation request, BCHD was aware of several factors that constituted "reasons beyond the family's control" justifying extensions under BCHD's Plan, including respiratory illness, loss of her vehicle and an extremely tight housing market.

90. Nonetheless, BCHD employees and agents made the following statements to Ms. Doe:

   a. that it was BCHD's policy not to grant a second extension unless there was an

13

emergency, noting as examples hospitalization and death (September 7, 2021);

b. that only one 30-day extension could be granted, per BCHD policy (September 7, 2021);

c. That "you were not hospitalized during your search time that would not allow you to locate a unit" (September 15, 2021);

d. "Per policy only one 30-day extension may be granted" (September 15, 2021); and

e. "[T]he situation described by Ms. Doe did not rise to the level of an emergency, and therefore, BCHD could not extend this voucher" (November 22, 2021).

91. None of these statements accurately describe BCHD's actual policies as set forth in its Plan.

92. All of these statements demonstrate arbitrary determinations made by BCHD staff in Ms. Doe's case.

93. As set forth above, BCHD's Plan requires that "If an applicant or participant indicates that an exception, change, or adjustment to a rule, policy, practice, or service is needed because of a disability, HUD requires that the PHA treat the information as a request for a reasonable accommodation, even if no formal request is made..." 2-II.C.

94. Around the time that Ms. Doe's voucher expired, Defendant received, via Ms. Doe's mother, a request for an extension due to Ms. Doe's disabilities that should have been treated as a request for a reasonable accommodation of her disabilities. Plan, 2-II.C.

95. Defendant also received, via counsel for Ms. Doe, an explicit written request for a reasonable accommodation of Ms. Doe's disabilities in November of 2021.

96. On neither occasion did Defendant treat these communications as reasonable accommodation requests, instead simply denying the relief requested.

97. Under BCHD's Plan, "If the PHA denies a request for an accommodation because there is no relationship, or nexus, found between the disability and the requested accommodation, the notice will inform the family of the right to appeal the PHA's decision through an informal review (if applicable) or informal hearing (see Chapter 16)." 2-II.E.

98. On neither occasion did Defendant provide Ms. Doe with written notice of her right to an informal conference or informal review.

99. Under BCHD's Plan, "If the PHA denies a request for an accommodation because it is not reasonable (it would impose an undue financial and administrative burden or fundamentally alter the nature of the PHA's operations), the PHA will discuss with the family whether an alternative accommodation could effectively address the family's disability-related needs without a fundamental alteration to the HCV program and without imposing an undue financial and administrative burden." 2-II.E.

100. On neither occasion did Defendant discuss whether an alternative accommodation could effectively address Ms. Doe's family's disability-related needs.

101. After requesting and receiving verification of the nature of Ms. Doe's disabilities, Defendant explicitly denied Ms. Doe's reasonable accommodation requests, first because the supporting documentation had not been received before Ms. Doe's voucher expired, and then because Ms. Doe's reasonable accommodation request had allegedly not been received before her voucher expired.

102. None of the communications denying Ms. Doe's reasonable accommodation requests informed her of her right to appeal the denial through an informal review or informal conference.

103. None of the communications denying Ms. Doe's reasonable accommodation requests discuss with the family whether an alternative accommodation could effectively address her

15

family's disability-related needs.

104. The Court should find that BCHD's actions in this case violate its own Administrative Plan, which in turn violates 24 CFR § 982.54(c).

105. Plaintiff is entitled to a declaratory judgment stating that Defendant violated her rights secured by law as alleged herein.

106. Plaintiff is entitled to a temporary restraining order, preliminary injunction, and permanent injunction enjoining Defendant to reinstate Ms. Doe's voucher for a term of at least ninety days, and as a reasonable accommodation of her disabilities.

107. Plaintiff is entitled to a preliminary injunction, and permanent injunction enjoining Defendant to memorialize Plaintiff's need for reasonable accommodations in her file and to develop a plan to ensure that she has "full access to the PHA's programs and services."

108. Ms. Doe has a probable right to recovery in this lawsuit, because Defendant did not comply with the federal housing law, BCHD's own Plan or the Fair Housing Act in refusing to extend or reinstate her Section 8 voucher.

109. Ms. Doe continues to suffer imminent, irreparable injury from the Defendant's unlawful refusal to extend or reinstate her Section 8 voucher because Ms. Doe is homeless.

110. Plaintiff has no adequate remedy at law in this matter because the rights involved are unique and irreplaceable.

**PRAYER FOR RELIEF**

WHEREFORE, Ms. Doe requests that the Court:

a. Declare that Defendant's refusal to extend Ms. Doe's voucher and subsequent refusal to reinstate her voucher violated its own Administrative Plan as well as 24 CFR § 982.54(c).

b. Declare that Defendant's refusal to extend Ms. Doe's voucher and subsequent refusal to reinstate her voucher violated the Fair Housing Act;

c. Declare that Defendant's refusal to extend Ms. Doe's voucher and subsequent refusal to reinstate her voucher violated the Americans with Disabilities Act;

d. Issue a temporary restraining order, a preliminary injunction, and a permanent injunction requiring Defendant to reinstate Ms. Doe's voucher for an initial term of ninety days.

e. Issue a permanent injunction (i) enjoining Defendant to memorialize Ms. Doe's disabilities in her file and develop a plan to ensure that she has full access to its programs and services.

f. Award Ms. Doe compensatory damages in an amount to be determined at trial;

g. Award Ms. Doe punitive damages in an amount to be determined at trial;

h. Award Ms. Doe reasonable costs and attorney fees incurred in bringing this action;

i. Award such other and further relief as the Court may deem appropriate, including monetary, injunctive and declaratory relief, as may be required in the interest of justice.

Respectfully submitted,

NEW MEXICO LEGAL AID, INC.

*/s/ jean philips*
Jean Philips, CAID # 09/070
Attorneys for Plaintiffs
P.O. Box 1475
Gallup, NM 87305
505 726 4537
jeanp@nmlegalaid.org